**DICKINSON WRIGHT PLLC**
MICHAEL N. FEDER
Nevada Bar No. 7332
Email: mfeder@dickinson-wright.com
GABRIEL A. BLUMBERG
Nevada Bar No. 12332
Email: gblumberg@dickinson-wright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada  89113-2210
Tel:  (702) 550-4400
Fax:  (844) 670-6009
*Attorneys for Plaintiff, X2O Media, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| X2O MEDIA, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>XENTIANT TECHNOLOGIES,<br>DAVID WILKINS, ERIK WALL,<br>VLADIMIR FEDORENCIKAS, AND<br>4MEDIA SOLUTIONS.<br><br>Defendants. | Case Number: 2:18-cv-01645-JCM-CWH<br><br>**FIRST AMENDED COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff X2O MEDIA, INC. ("X2O"), by and through its counsel at the law firm of Dickinson Wright, PLLC, alleges as follows against Defendants XENTIANT TECHNOLOGIES ("Xentiant"), DAVID WILKINS ("Wilkins"), ERIK WALL ("Wall"), VLADIMIR FEDORENCIKAS ("Fedorencikas"), and 4Media Solutions ("4Media" and together with Xentiant, Wilkins, Wall, and Fedorencikas, "Defendants"):

### NATURE OF THE ACTION

1.      This is an action by X2O for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, trade secret misappropriation under Nevada's Uniform Trade Secrets Act, NRS § 600A, trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, breach of contract, unjust enrichment, conversion, intentional interference with business

1



relationships, intentional interference with prospective economic advantage, unfair competition, and conspiracy.

## PARTIES

2. X2O is a Canadian corporation with its principal place of business at 147 Saint Paul St West, Suite 240, Montréal, Quebec. X2O does extensive business in the United States. Most of X2O's resellers are located in the United States. Most of X2O's salesforce is located in the United States. X2O also has a systems engineer and a customer service employee in the United States. The bulk of X2O's sales are to customers in the United States.

3. Xentiant is a Canadian company having its principal place of business at 3 Place Ville Marie, Suite 400, Montréal, Quebec. X2O is informed and believes and thereupon alleges that Xentiant, like X2O, does business in the United States and has resellers and salesforce located in the United States.

4. Wilkins is an individual. Wilkins is both a citizen and resident of Canada. X2O is informed and believes and thereupon alleges that Wilkins is the founder and CEO of Xentiant.

5. Wall is an individual. Wall is both a citizen and resident of Canada.

6. Fedorencikas is an individual. Fedorencikas is both a citizen and resident of the Netherlands.

7. 4Media is a California company having its principal place of business in San Francisco, California. X2O is informed and believes and thereupon alleges that 4Media does business in the United States.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action.

9. This trade secret misappropriation action raises federal questions under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, and Lanham Act, 15 U.S.C. § 1051 *et seq.* This Court has supplemental jurisdiction over Plaintiff's breach of contract, unjust enrichment, conversion, intentional interference with business relationships, intentional interference with prospective business advantage, conspiracy, and unfair competition claims pursuant to 28 U.S.C. § 1367.

DW
DICKINSON WRIGHT
ATTORNEYS AT LAW

2

10. This Court has personal jurisdiction over Defendants.

11. Venue is proper in this district under 28 U.S.C. § 1391.

**BACKGROUND**

12. Founded in 2006, X2O provides end-to-end solutions for enterprise visual communications, allowing business users to easily create their own interactive real-time enterprise applications and share them with others on any screen or device.

13. X2O's customers include many of the largest companies in the Fortune 500. X2O is a recognized leader in visual communications solutions for the enterprise, healthcare, manufacturing, and education markets. X2O's software allows the creation of visual communication channels linked to real-time information sources ("the X2O Platform"). The X2O Platform is described in more detail in the printout attached hereto as Exhibit A.

14. X2O markets the X2O Platform under the trademark X2O ("the X2O Mark") and uses the X2O Mark in the following commercial form, which prominently features a "X":



15. The development of the X2O Platform began in 2006 with then X2O-employee, Vlad Fedorencikas, as a principal architect and developer of the server for the X2O Platform. At that time, Wilkins contributed primarily in development of a plugin, which allowed the X2O Platform to use Microsoft's POWERPOINT software as an authoring environment.

16. In 2010, Wilkins developed for the X2O Platform a prototype authoring environment called "CHANNEL DESIGNER," which continues to be used in the X2O Platform to this day. This authoring environment allows users of the X2O Platform to build "channels" and link them to multiple inputs, then publish them to multiple endpoints.

17. The X2O Platform is based on software that is proprietary to X2O. The source code for the X2O Platform comprises proprietary and confidential information.

18. X2O has derived, and continues to derive, significant value from the secrecy of its



trade secrets, which include, but are not limited to, X2O's customers, vendors, and the proprietary and confidential information of the X2O Platform, including the source code (the "Trade Secrets").

19.    During all relevant times herein, X2O maintained in secret the proprietary and confidential information of the X2O Platform. X2O has taken reasonable steps to maintain the secrecy of the proprietary and confidential information of the X2O Platform.

20.    In 2014, X2O was acquired by Barco, a global leader in professional visualization systems.

21.    In early 2018, Stratacache, Inc., a global leader in digital signage and digital consumer engagement, acquired X2O from third party Barco.

22.    Wilkins was a founder of X2O and served as its CEO and President from 2006 to 2016.

23.    Wall was an employee of X2O and served as a software developer for X2O during his employment.

24.    Fedorencikas was an employee of X2O and served as a software developer, system architect, and director of development for X2O during his employment.

25.    4Media was a former marketing consultant to X2O who performed sales and marketing services, including, but not limited to, developing a go-to-market strategy for X2O.

26.    Wilkins, Wall, and Fedorencikas were, and remain, intimately familiar with the X2O Platform and its development and were, during the term of their employment with X2O, privy to the proprietary and confidential information of the X2O Platform.

27.    Defendant Wilkins, Wall, and Fedorencikas entered into employment agreements with X2O. A copy of Wilkins' employment agreement which, upon information and belief, mirrors the employment agreements executed by Wall and Fedorencikas, is attached hereto as Exhibit B and provides, in part, as follows:

**4.4  Non-Disclosure.**

**4.4.l**  The Employee hereby agrees and undertakes that for the duration of this Agreement and at any time following the date of termination or expiration of the

4



Employee's Employment with X20 hereunder, he shall not directly or indirectly, except as authorised or directed by X20, disclose to others, use for his own benefit, or copy or make notes of any knowledge or information relating to the Business or activities of X20 or its Affiliates, including but not limited to product and market information, business plans, financial information, budgets, product development, trademarks, copyrights, patents, know-how, trade secrets, industrial designs and other confidential or proprietary information, which is the property of X20 or its Affiliates or which may come to his knowledge during the term hereof, or any other information concerning the Business, operations and activities of X20 or its Affiliates. Furthermore, the Employee undertakes to take reasonable precautions to preserve the confidential, proprietary and secret nature of all information disclosed to him as being confidential or secret in nature or which he knows is confidential or secret in nature….

*****

**5.6 Obligations of Employee upon Termination.** Upon termination of this Agreement and employment of the Employee for any reason, the Employee shall forthwith deliver to X2O all books, documents, papers, materials…or other property belonging to X2O or its Affiliates and/or relating to the business and affairs of X2O or its Affiliates which are in his possession or under his power of control….

28.    4Media entered into a Consulting Agreement with X2O in 2013 (the "Consulting Agreement").  A copy of 4Media's Consulting Agreement is attached hereto as Exhibit D and provides, in part, as follows:

**5.**    **Confidentiality** – The Consultant must guard against prejudicial interests and avoid any situation likely to create a conflict of interest between the Services performed for X2O Media and any other personal or professional situation or occupation.  The Consultant will use its best efforts to maintain the confidentiality of any proprietary or confidential X2O Media information and shall not disclose such information to any third parties including, any affiliates or subsidiaries without the express written approval of X2O



DICKINSON WRIGHT
ATTORNEYS AT LAW

Media.    Where applicable, all information provided by X2O Media including the Specifications remains the confidential and proprietary property of X2O Media and should be return to X2O Media upon request.    X2O Media's Specifications may contain approaches, techniques, financial plans, marketing plans, product development plans, business strategies or other information proprietary to X2O Media and as such it shall not be disclosed in whole or in part to third parties without the prior written approval of X2O Media.

29.    In August of 2016, Wilkins left X2O's employ. X2O is informed and believes and thereupon alleges that Wilkins acted in contravention of his obligations under his employment agreement and wrongfully and intentionally retained certain confidential and proprietary property belonging to X2O, including, without limitation, materials comprising or pertaining to the X2O Platform.

30.    X2O is informed and believes and thereupon alleges that Wall and Fedorencikas acted in contravention of their obligations under their employment agreements and wrongfully and intentionally retained certain confidential and proprietary property belonging to X2O, including, without limitation, materials comprising or pertaining to the X2O Platform

31.    X2O is informed and believes and thereupon alleges that in September of 2017, a little more than 12 months after departing X2O, Wilkins founded Xentiant.

32.    X2O is informed and believes and thereupon alleges that Wilkins is currently the CEO of Xentiant and, moreover, has been the CEO of Xentiant since its founding.

33.    In early 2018, and by no later than the June 2018 InfoComm trade show in Las Vegas, Nevada, Xentiant released to the public its Xentiant software ("the Xentiant Platform").

34.    Xentiant touts the Xentiant Platform as allowing "users to easily create powerful interactive apps and connect them with other users, creating virtual communities that let users communicate in real-time, create and share content, and develop interactive experiences spanning multiple screens and devices." Further details of the Xentiant Platform are described in Exhibit C



attached hereto.

35.     While exhibiting at the InfoComm trade show in Las Vegas, Wilkins attempted to solicit business from X2O's customers.  Specifically, Wilkins solicited Lockheed Martin and McCann Systems, both of whom he was aware are current customers of X2O.

36.     The Xentiant Platform was released to the public only a matter of months after Xentiant was founded, and less than 2 years after Wilkins' departure from X2O.

37.     X2O is informed and believes and thereupon alleges that based on, *inter alia,* the similarities between the appearance and functionalities of the X2O Platform and the Xentiant Platform, Wilkins, acting on his own or in combination with Xentiant and/or one or more agents, including, but not limited to, Wall and Fedorencikas, misappropriated X2O's proprietary and confidential software and utilized the same in development of the Xentiant Platform.

38.     X2O is informed and believes and thereupon alleges that the Xentiant Platform is being sold or offered for sale primarily to customers and potential customers in the United States, including customers and potential customers of X2O.

39.     X2O is informed and believes and thereupon alleges that 4Media has entered into a partnership with Xentiant whereby 4Media is aiding Xentiant in contacting and soliciting current and former X2O customers as well as current X2O employees.

40.     In commerce, Xentiant uses the trademark shown below ("the Xentiant Mark") in the form of a stylized "X", including in the sale and promotion of the Xentiant Platform:



**COUNT I – TRADE SECRET MISAPPROPRIATION – 18 U.S.C. § 1836(b)**

41.     X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

42.     X2O is the owner of valuable Trade Secrets related to products and services used

7

in, or intended for use in, interstate or foreign commerce, including, without limitation, the X2O Platform including, without limitation, X2O's programs and codes for the X2O Platform, both tangible and intangible and stored, compiled and memorialized physically, electronically and graphically.

43. X2O has taken reasonable measures to keep its Trade Secrets secret.

44. X2O's Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

45. Wilkins, Wall, Fedorencikas, 4Media, and Xentiant disclosed and/or used X2O's Trade Secrets without its express or implied consent including, without limitation, in the development of the Xentiant Platform.

46. Wilkins, Wall, Fedorencikas, and 4Media originally acquired X2O's Trade Secrets under circumstances giving rise to duties to maintain the secrecy of the Trade Secrets and to limit use of the Trade Secrets, including, but not limited to, the duty to return to X2O any and all materials comprising such Trade Secrets upon termination of their employment or consulting agreement with X2O and the duty to thereafter refrain from using such Trade Secrets.

47. Wilkins, Wall, Fedorencikas, and 4Media used improper means to acquire X2O's Trade Secrets by, at least, failing to abide by their employment agreements or the Consulting Agreement and wrongfully and intentionally retaining possession of X2O's Trade Secrets.

48. Wilkins, Wall, Fedorencikas, 4Media, and Xentiant knew or had reason to know at the time of disclosure or use of X2O's Trade Secrets that their knowledge of X2O's Trade Secrets was derived from or through X2O.

49. At least by virtue of Wilkins, Wall, Fedorencikas, and 4Media's roles with Xentiant, Xentiant's acquisition of X2O's Trade Secrets was undertaken with the knowledge that such acquisition was improper; that Wilkins, Wall, Fedorencikas, and 4Media owed a duty of confidentiality to X2O in respect of such Trade Secrets and, consequently, that Wilkins, Wall, Fedorencikas, and 4Media were prohibited from making any disclosure thereof to Xentiant.

8

50. Defendants, with intent to convert X2O's Trade Secrets that are related to a product or service used in or intended for use in interstate or foreign commerce to the economic benefit of X2O, and intending or knowing that the offense will injure X2O, knowingly did the following:

a. stole, or without authorization, removed, concealed, or by fraud, artifice, or deception obtained such Trade Secrets;

b. without authorization copied, duplicated, sketched, photographed, downloaded, uploaded, altered, destroyed, photocopied, replicated, transmitted, delivered, sent, mailed, communicated, or conveyed the Trade Secrets;

c. received or possessed the Trade Secrets, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

d. attempted to commit any of the offenses described in paragraphs (a) through (c); and/or

e. conspired with one or more other persons to commit any of the offenses described in paragraphs (a) through (c), and one or more of such persons performed an act to effect the object of the conspiracy.

51. As a result of such misappropriation, X2O has suffered damages in an amount to be determined at trial.

52. X2O has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

**COUNT II- VIOLATION OF THE UNIFORM TRADE SECRETS ACT-NRS 600A**

53. X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

54. X2O possesses Trade Secrets and takes adequate measures to guard the secrecy of its confidential information and Trade Secrets.

55. The Trade Secrets derive independent economic value from not being generally known and not being readily ascertainable by the public.

DICKINSON WRIGHT
ATTORNEYS AT LAW

9

56.     Wilkins, Wall, Fedorencikas, and 4Media obtained access to the Trade Secrets under circumstances giving rise to a duty to maintain the secrecy of the Trade Secrets.

57.     Wilkins, Wall, Fedorencikas, and 4Media intentionally and with intent to injure X2O disclosed the Trade Secrets to Xentiant without X2O's express or implied consent.

58.     Defendants have wrongfully used X2O's Trade Secrets for their own business benefit and have received direct and indirect benefits from that wrongful utilization in addition to harming X2O and causing X2O to lose profits.

59.     Defendants, with intent to convert the Trade Secrets that are related to a product or service used in or intended for use in interstate or foreign commerce to the economic benefit of X2O, and intending or knowing that the offense will injure X2O, knowingly did the following:

f.      stole, or without authorization, removed, concealed, or by fraud, artifice,  or deception obtained the Trade Secrets;

g.      without authorization copied, duplicated, sketched, photographed, downloaded, uploaded, altered, destroyed, photocopied, replicated, transmitted, delivered, sent, mailed, communicated, or conveyed the Trade Secrets;

h.      received or possessed the Trade Secrets, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

i.      attempted to commit any of the offenses described in paragraphs (a) through (c); and/or

j.      conspired with one or more other persons to commit any of the offenses described in paragraphs (a) through (c), and one or more of such persons performed an act to effect the object of the conspiracy.

60.     As a result of such misappropriation, X2O has suffered damages in an amount to be determined at trial.

61.     X2O has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.



## COUNT III – TRADEMARK INFRINGEMENT- 15 U.S.C. § 1051 et seq.

62. X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

63. The actions of Xentiant in use of the Xentiant Mark as alleged herein constitute false designation of origin, false advertising and unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64. The actions of Xentiant are likely to cause confusion, or to cause mistake, or to deceive relevant consumers as to the affiliation, connection, or association of Xentiant with X2O, or as to the origin, sponsorship, or approval of Xentiant's products or services by X2O.

65. X2O has no control over the nature and quality of the goods or services sold or offered for sale by Xentiant. Any failure, neglect, or default by Xentiant in providing such products has and will continue to reflect adversely on X2O as the believed source of origin, affiliation, or approval thereof, hampering efforts by X2O to continue to protect its outstanding reputation for high quality goods and services, resulting in loss of clients, all to the irreparable harm of X2O.

66. X2O has and will continue to be irreparably harmed unless Xentiant is immediately and permanently enjoined from any further use of the Xentiant Mark and any further marketing, advertising or sale of products and/or services using the Xentiant Mark.

67. X2O has no adequate remedy at law and serious damage to its trademark rights will result unless Xentiant's wrongful use of the Xentiant Mark is enjoined by the Court.

68. The actions of Xentiant as alleged herein constitute intentional, willful, knowing and deliberate unfair competition and false advertising pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

69. Xentiant's acts of unfair competition and false advertising in violation of the Lanham Act as alleged herein have caused, and will continue to cause, X2O to suffer damages in an amount unknown at this time and have caused, and will continue to cause Xentiant to gain revenues and profit in an amount unknown at this time.

70. Pursuant to 15 U.S.C. §1117(a), X2O is entitled to an award of monetary damages

11



in an amount equal to the losses suffered by X2O and the revenues and/or profits gained by Xentiant, which damages should be augmented as provided by 15 U.S.C. §1117(a).

71.    Pursuant to 15 U.S.C. §1117(a), any monetary damages awarded to X2O should be trebled.

72.    Pursuant to 15 U.S.C. §1117(a), X2O is entitled to an award of attorneys' fees and costs of suit.

### COUNT IV – BREACH OF THE EMPLOYMENT AGREEMENT

73.    X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

74.    X2O's employment agreements with Wilkins, Wall, and Fedorencikas are valid, enforceable written contracts, with definite and certain terms.

75.    X2O has performed all of its required obligations under the employment agreements.

76.    As stated above, Wilkins, Wall, and Fedorencikas breached their employment agreements by, *inter alia*, misappropriating X2O's Trade Secrets without X2O's consent, including by disclosing said Trade Secrets to Xentiant as further described herein.

77.    As a result of Wilkins, Wall, and Fedorencikas' violation of their employment agreements, X2O has suffered damages in an amount to be determined at trial.

78.    X2O has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

### COUNT V– BREACH OF THE CONSULTING AGREEMENT

79.    X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

80.    The Consulting Agreement is a valid, enforceable written contract, with definite and certain terms.

81.    X2O has performed all of its required obligations under the Consulting Agreement.

12



82.    As stated above, 4Media breached the Consulting Agreement by, *inter alia*, misappropriating X2O's Trade Secrets without X2O's consent, including by disclosing said Trade Secrets to Xentiant as further described herein.

83.    As a result of 4Media's violation of the Consulting Agreement, X2O has suffered damages in an amount to be determined at trial.

84.    X2O has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

### COUNT VI – UNJUST ENRICHMENT

85.    X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

86.    By their unlawful acquisition and use of X2O's Trade Secrets, Defendants have unjustly retained benefits to X2O's detriment, and Defendants retention thereof violates fundamental principles of justice, equity, and good conscience.

87.    Defendants should be required to disgorge all monies, profits and gains they have obtained or will unjustly obtain in the future at the expense of X2O, and a constructive trust should be imposed thereof for the benefit of X2O.

88.    X2O has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

### COUNT VII – CONVERSION

89.    X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

90.    X2O is the owner of its Trade Secrets.

91.    Defendants knew or should have known that X2O's Trade Secrets were owned by X2O.

92.    Defendants have exerted a distinct act of dominion and control over X2O's Trade



13

Secrets in denial of and/or inconsistent with X2O's title or rights therein, and in derogation, exclusion or defiance of X2O's title or rights therein.

93.     Defendants have wrongfully utilized X2O's Trade Secrets for their own business benefit and have received direct and indirect benefits from that wrongful utilization in addition to harming X2O and causing X2O to lose profits.

94.     Defendants' misappropriation of X2O's Trade Secrets was intentional, knowing, willful, malicious, and oppressive.

95.     As a result of Defendants' conduct, X2O has suffered damages in an amount to be determined at trial.

96.     X2O has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

### COUNT VIII – INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

97.     X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

98.     Xentiant knew and was aware of X2O's contractual relationships with Wilkins, Wall, Fedorencikas, and 4Media.

99.     Xentiant interfered with X2O's business relationships by, *inter alia*, convincing Wilkins, Wall, Fedorencikas, and 4Media to breach their employment agreements and the Consulting Agreement by misappropriating X2O's Trade Secrets, infringing on X2O's trademark, create and contacting X2O's customers to induce or attempt to induce these third-parties to cease doing business with X2O and to enter into a business relationship with Xentiant.

100.     As a result of Xentiant's conduct, X2O has suffered damages in an amount to be determined at trial.

101.     X2O has been required to retain the services of an attorney to pursue its claims against Xentiant and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

14



DICKINSON WRIGHT
ATTORNEYS AT LAW

## <u>COUNT IX – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC</u>
## <u>ADVANTAGE</u>

102. X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

103. Defendants knew and were aware of X2O's prospective contractual business relationships with customers.

104. Defendants intended to harm X2O by preventing prospective contractual business relationships with customers.

105. Defendants had no privilege or justification for interfering with and preventing X2O from executing these prospective contractual business relationships.

106. As a result of Defendants' conduct, X2O has suffered damages in an amount to be determined at trial.

107. X2O has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

## <u>COUNT X – UNFAIR COMPETITION</u>

108. X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

109. X2O owns a protectable right in its trademark and protects its Trade Secrets.

110. Xentiant's use of its trademark is likely to confuse, cause mistake or deceive an appreciable number of reasonable customers with respect to X2O's trademark.

111. Xentiant's use of X2O's Trade Secrets including, but not limited to, X2O's source code and other proprietary and confidential information of the X2O Platform, is unfairly allowing Xentiant to compete with X2O.

112. Xentiant's use of its website, which has a similar look and feel as X2O's website, is unfairly allowing Xentiant to compete with X2O.

113. Xentiant's interference with the Consulting Agreement and the employment


DICKINSON WRIGHT
ATTORNEYS AT LAW

agreements of Wilkins, Wall, and Fedorencikas, is unfairly allowing Xentiant to compete with X2O.

114. The actions of Xentiant as alleged herein constitute intentional, willful, knowing and deliberate unfair competition.

115. Xentiant's acts of unfair competition as alleged herein have caused, and will continue to cause, X2O to suffer damages in an amount unknown at this time and have caused, and will continue to cause Xentiant to gain revenues and profit in an amount unknown at this time.

116. X2O is entitled to an award of monetary damages in an amount equal to the losses suffered by X2O and the revenues and/or profits gained by Xentiant.

117. X2O has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

### COUNT X – CONSPIRACY

118. X2O re-alleges and incorporates by reference each and every allegation set forth above and incorporates them herein by reference as though fully set forth herein.

119. Defendants, by acting together in concert and pursuant to an agreement amongst themselves, intended to accomplish an unlawful objective for the purpose of harming X2O including, but not limited to, misappropriating X2O's Trade Secrets and infringing on X2O's trademark.

120. As a direct, proximate, and foreseeable result of Defendants' conduct, X2O has been damaged in an amount to be proven at trial.

121. X2O has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

### PRAYER FOR RELIEF

WHEREFORE, X2O prays for relief as follows:

A. A judgment that Wilkins, Wall, and Fedorencikas breached their valid, enforceable,



and written employment agreements.

B.      A judgment that 4Media breached the valid, enforceable, and written Consulting Agreement.

C.      A preliminary and permanent injunction enjoining business activities – including the use, development, sourcing and marketing – for any programs, products or services of Defendants, or either of them, that incorporate, use or embody X2O's Trade Secrets and other intellectual property.

D.      A preliminary and permanent injunction enjoining Xentiant's use of the Xentiant Mark.

E.      A judgment awarding X2O compensatory damages as a result of Wilkins, Wall, and Fedorencikas' breach of their employment agreements, together with interest and costs for damages for which an adequate remedy at law exists, including, without limitation, lost profits, price erosion, a decrease in value to X2Os' business, and costs to remedy the effects of the misappropriation.

F.      A judgment awarding X2O compensatory damages as a result of 4Media's breach of the Consulting Agreement, together with interest and costs for damages for which an adequate remedy at law exists, including, without limitation, lost profits, price erosion, a decrease in value to X2Os' business, and costs to remedy the effects of the misappropriation.

G.      Damages assessed against Defendants pursuant to the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831 *et seq*.

H.      Damages assessed against Defendants pursuant to the Lanham Act of 2016, 15 U.S.C. § 1051 *et seq*.

I.      Imposition of a constructive trust for the benefit of X2O as a vehicle for disgorgement of all monies, profits and gains Defendants have obtained or will unjustly obtain in the future at the expense of X2O.

J.      A grant of a permanent injunction to eliminate the unfair advantage Defendants gained by using X2O's Trade Secrets and other intellectual property and, more specifically, (i) an


DICKINSON WRIGHT
ATTORNEYS AT LAW

order that Defendants certify to the court that they have destroyed all documents and things that include or embody X2O's Trade Secrets and other intellectual property; (ii) an order prohibiting the Defendants from reentering the market for the offending products or services for a period specified by the court; (iii) an order that Defendants refrain from selling their existing inventory of offending products; (iv) an order for a procedure for contacting customers and removing the products and a certification of the same; and (v) an order for a procedure for inspecting Defendants' premises to ensure that the Trade Secrets and other intellectual property are no longer used.

K.      A grant of permanent injunction enjoining Xentiant's use of the Xentiant Mark.

L.      Punitive damages for Defendants' willful, and wanton conduct as complained of herein.

M.      Exemplary damages pursuant to the Defend Trade Secrets Act of 2016 for Defendants' willful and malicious conduct.

N.      Expenses, costs and attorneys' fees.

O.      Such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

X2O hereby demands a trial by jury of all issues triable by a jury.

DATED this 8th day of October 2018.

**DICKINSON WRIGHT PLLC**

MICHAEL N. FEDER
Nevada Bar No. 7332
GABRIEL A. BLUMBERG
Nevada Bar No. 12332
8363 West Sunset Road, Suite 200
Las Vegas, Nevada  89113-2210
Tel:  (702) 550-4400
Fax:  (844) 670-6009
*Attorneys for Plaintiff, X2O Media, Inc.*



DICKINSON WRIGHT
ATTORNEYS AT LAW

**CERTIFICATE OF SERVICE**

The undersigned, an employee of Dickinson Wright PLLC, hereby certifies that on the 8th day of October 2018, a copy of the foregoing **FIRST AMENDED COMPLAINT** was served on Xentiant Technologies and David Wilkins by email as follows:

RYAN TYZ
Tyz Law Group PC
rtyz@tyzlaw.com
4 Embarcadero Center, Floor 14
San Francisco, CA 94111
Tel.: (415) 849-3578
*Attorneys for Defendants Xentiant Technologies and David Wilkins*

_____
An Employee of Dickinson Wright PLLC

19